**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **POLYWORKS, INC.** Plaintiff | : | |
| v. | : | Civil Action No. ________ |
| **NEWELL RUBBERMAID INC.** **SANFORD NORTH AMERICA** **SANFORD LP** Defendants | : | CA 06 524 |

## COMPLAINT

1. The Plaintiff, Polyworks Inc., a Rhode Island corporation (hereafter referred to as either "the Plaintiff" or "Polyworks") asserts this Complaint against the Defendants, Newell Rubbermaid Inc., through its division Sanford North America, a Delaware corporation and Sanford LP, a limited partnership organized in the State of Illinois (hereafter collectively referred to either as "the Defendants" or "Sanford") seeking a judgment for damages based on claims for Breach of Contract, Breach of the Covenant of Good Faith, Intentional Misrepresentation, Negligent Misrepresentation and a claim for Declaratory Judgment and any other relief allowed by equity and law.

## PARTIES

2. Polyworks is a corporation organized under the laws of the State of Rhode Island, with principal offices located in North Smithfield, Rhode Island that develops and designs silicone products, polyurethane gel products, medical cushioning products, and other innovative manufactured products.

3. Upon information and belief, Newell Rubbermaid is a corporation organized under the laws of the State of Delaware with principal offices in Atlanta, Georgia with its Sanford North America division maintaining offices in Bellwood, Illinois and is primarily in the business of manufacturing, marketing and selling writing instruments throughout the world.

4. Sanford LP, upon information and belief, is a limited partnership organized in the State of Illinois and affiliated with Sanford North America.

## JURISDICTION AND VENUE

5. Jurisdiction is appropriate for this Court under 28 U.S.C. § 1332 because there is complete diversity among the parties and because the amount in controversy exceeds the statutory requirement.

6. Venue is proper for this Court under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

7. On or about March 2, 2004, the Parties entered into a contract concerning the development and design of equipment to produce a particular type of pen which was commonly referred to by the parties as the Plasma Pen. Defendants made representations to Polyworks that Defendants expected to order at least 10,000,000 units of Plasma Pens from Polyworks over a two year period. In reliance upon these representations, and others, made by Sanford, Polyworks agreed to expend substantial time and money in developing a proprietary technology and process and specialized, custom-built equipment sufficient to produce 12,000 units per shift and to employ two shifts a day to produce 120,000 units, per week, of the Plasma Pen. Further, Defendant required Plaintiff to agree to a "not to exceed" unit price for the Plasma Pen and in reliance upon Defendant's representations of annual projected volume demand, Plaintiff agreed to this unit price requirement.

8. Defendants also represented that they would provide Polyworks with financial relief in the event that Defendants cancelled the order prior to fulfilling a minimum commitment of 10,000,000 units. Sanford also represented that it would likely attain 10,000,000 orders within 2 years of beginning the project.

9. Subsequent to the execution of the agreement, Polyworks expended considerable time, money and effort developing the proprietary technology process and equipment to develop the grip for the Plasma Pen, for which a patent has been filed by Polyworks, as inventor and owner. Based on Defendants' representations to Polyworks that Defendants expected to order at least 10,000,000 units of Plasma Pens from Polyworks over a two year period, as part of the agreement Polyworks agreed to grant Defendant exclusive rights to the proprietary technology and process for grips for writing instruments and further agreed not to sell writing instruments to third parties incorporating the grip technology while the contract was active.

10. Subsequent to the execution of the agreement, after Polyworks had expended considerable time, money and effort developing the proprietary technology and process and specialized, custom-built equipment to manufacture the Plasma Pen, and after hiring personnel to produce the pen, the Defendants ordered only approximately 1,000,000 Plasma Pens and when Polyworks questioned the Defendants about the number of orders and requested meetings with the Defendants to discuss this issue, the Defendants postponed meetings and delayed any substantive response to Polyworks' concerns for over a year.

11. Defendants, after considerable delay, finally notified the Plaintiff that Sanford would make one final, small order in December, 2005 and no further orders have been placed to date.

12. Defendants have further refused to provide Polyworks with the promised financial relief for failure to order the minimum commitment and have also refused to admit that they have cancelled the contract. By taking this action, Defendants are seeking to not only avoid paying the cancellation fee but also precluding and preventing Polyworks from using its own technology to manufacture, market, license and/or sell writing instruments incorporating the grip technology designed for the Plasma Pen to third parties and any other entities in the marketplace.

**COUNT ONE**
**(Breach of Contract)**

13. The Plaintiff re-alleges all preceding paragraphs for this count as if fully set forth herein.

14. The parties entered into a contractual relationship for the development and design of specialized, proprietary, custom-built equipment and other materials sufficient to produce the Plasma Pen in large quantities. Polyworks designed and developed a specific proprietary technology and process for the grip of the Plasma Pen, for which Polyworks has filed a patent.

15. As part of the contract, and based on representations that Defendants would be purchasing 120,000 units per week, the Plaintiff agreed it would not market or sell writing instruments that incorporated the grips designed for the Plasma Pen to any entity other than the Defendants, and Plaintiff also agreed not to use this proprietary technology and process to manufacture grips for any other entity other than Sanford and/or Newell Rubbermaid for the time the business arrangement was active.

16. In accord with the contract, the Defendants also agreed, in the event that the Defendants failed to order at least 10,000,000 units before cancelling the contract, that Sanford would pay the Plaintiff $150,000 to compensate Polyworks for development costs related to the design and construction of the equipment necessary to manufacture the Plasma Pen and that the Plaintiff would be entitled to ownership interest in the equipment designed and developed for the Plasma Pen.

17. After almost a year of postponed meetings and other deliberate delays, the Defendants placed one additional, small order on December 21, 2005 and while Defendants have suggested there may be one final order, no such order has been placed and Defendants have essentially abandoned the Plasma Pen project. To date, Sanford has ordered only 1,029,074 units from Plaintiff, well short of the 10,000,000 units Defendants projected they would order.

18. Defendants have since advised Polyworks that it is their position that the contract has not been cancelled and Defendants, in fact, refuse to admit that by their actions they have cancelled the contract, yet Defendants have placed no orders since December 21, 2005 and its personnel have indicated that no further orders will be made for the Plasma Pen.

19. Polyworks has since laid off workers who had been hired to work on the production line for the Plasma Pens and the production equipment and tooling components constructed for the Plasma Pens by Polyworks remains idle, consuming both financial resources and physical plant resources. Further, Polyworks has been precluded and prevented from using its own technology to manufacture, market, license and/or sell writing instruments incorporating the grip technology designed for the Plasma Pen to third parties and any other entities in the marketplace.

**WHEREFORE**, the Plaintiff has suffered and continues to suffer substantial damages due to the breach of the contract and requests monetary damages sufficient to compensate Polyworks for lost profits, loss of potential profits, expenses for the construction and maintenance of the proprietary equipment, lease and insurance costs and expenses, the cancellation fee, ownership of the proprietary technology and process, punitive damages for bad faith dealing and such other relief as allowed by law and equity as well as attorneys fees, costs and interest on any monetary judgment allowed by this Honorable Court.

## COUNT TWO
### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

20. The Plaintiff re-alleges all preceding paragraphs for this count as if fully set forth herein.

21. The parties entered into a contractual relationship for the development and design of equipment and other materials sufficient to produce the Plasma Pen in large quantities. As part of the agreement, Polyworks agreed to provide Sanford with the exclusive rights to the proprietary process and supply of all of the Plasma Pens to be produced.

22. The Plaintiff entered into this contract based on Sanford's representations that it would require a capacity of at least 6,000,000 units, annually, and that Polyworks should initially hire personnel to staff two shifts per working day to produce 12,000 units per shift for a total of 120,000 units per week of the Plasma Pen.

23. Relying upon these representations, the Plaintiff invested more than $550,000 of its own capital into the design and development of the equipment and the manufacturing process sufficient to produce the Plasma Pen in the amounts that Sanford represented that it would require. Polyworks also invested in hiring and training personnel for the two shift operation to produce the required, large volume of Plasma Pens.

24. Upon information and belief, Sanford has been in the writing instrument production business since 1857 and holds itself out as an international leader in the writing instrument industry. Therefore, Sanford knew, or under the circumstances should have known, that Polyworks would, and did in fact, rely upon the promises and representations made by Sanford with respect to the likely demand and requirements for production of the Plasma Pen.

25. Sanford established terms and conditions for the design and development of the Plasma Pen and knew, or should have known, that it created a contract with Polyworks to design, develop and manufacture the Plasma Pen at the rate of 6,000,000 units annually.

26. Defendants, at various points, indicated to Polyworks that it expected to market the Plasma Pen at a retail price of approximately $4.00 to $5.00 per unit.

27. Defendants knew or should have known, at or near the time they made representations to Polyworks regarding output requirements for the Plasma Pen, that Sanford's own market information indicated that successful sales volumes for a pen in the $4.00 to $5.00 range was, at best, 1,500,000 units per year which was significantly less than the 10,000,000 units Sanford had advised Polyworks it expected to sell in the first two years of production of the Plasma Pen.

28. The Defendants owed the Plaintiff a duty to operate and conduct themselves in good faith at all times during their commercial dealings.

29. Upon information and belief, Defendants made representations regarding the demand for the Plasma Pen, and its production requirements, that were highly inflated and/or significantly inaccurate and either knew, or should have known through their own expertise and investigation, that the projected demand represented to Polyworks was highly inflated and/or significantly inaccurate.

30. Sanford allowed Polyworks to rely upon these inflated, and inaccurate estimates and made no reasonable, timely effort to advise Polyworks that these estimates were inflated, and inaccurate and knowingly, and in bad faith, allowed Polyworks to invest substantial funds and expend significant research and development resources to design and develop the proprietary technology and process, materials, components and equipment to manufacture the Plasma Pen.

31. Defendants have only ordered 1,029,074 units of Plasma Pens to date and while Sanford has no reasonable expectation of ordering any significant volume of Plasma Pens in the future, Defendants maintain that the contract has not been cancelled and therefore seek, under the guise of an exclusive production contract, to prevent and preclude Polyworks from manufacturing, marketing, licensing and selling pens that incorporate the grips designed for the Plasma Pens to third parties and any other entity, and further seek to avoid paying the cancellation fee and losing exclusive rights in the proprietary technology and manufacturing process.

32. Defendant's actions and conduct constitute bad faith dealing and as a direct and proximate result of Sanford's conduct, Polyworks has suffered, and continues to suffer, damages.

**WHEREFORE**, the Plaintiff has suffered and continues to suffer substantial damages due to the breach of the contract and the failure by Defendants to deal in good faith and therefore Plaintiff requests monetary damages sufficient to compensate Polyworks for lost profits, loss of potential profits, expenses for the construction and maintenance of the proprietary equipment, lease and insurance costs and expenses, the cancellation fee, ownership of the proprietary

process, punitive damages for bad faith dealing and such other relief as allowed by law and equity as well as attorneys fees, costs and interest on any monetary judgment awarded by this Honorable Court.

## COUNT THREE
### (INTENTIONAL MISREPRESENTATION)

33. The Plaintiff re-alleges all preceding paragraphs for this count as if fully set forth herein.

34. Sanford represented to Polyworks that there would be significant demand for the Plasma Pen, and Sanford was aware that in addition to Sanford's investment that Polyworks was investing substantial amounts of its own funds and resources to design the proprietary process and to build specialized equipment that would produce at least 6,000,000 units of the Plasma Pen annually.

35. To induce Plaintiff to enter into the contract, Sanford represented to Polyworks that it had substantial commercial buyers and retailers in the national marketplace, including Wal-Mart and other retailers and dealers, who would support a volume of 5-6 million units per year.

36. At the time Sanford made these representations, and other representations incorporated herein, to Polyworks, or shortly thereafter, Sanford either knew, or should have known under the circumstances, that those representations were false or materially inaccurate.

37. Sanford understood that Polyworks had relied upon these representations and, in addition to designing the proprietary grip and custom building the manufacturing equipment, Defendants knew that Polyworks had hired personnel to staff two shifts, per day, to produce the Plasma Pen in the quantities Sanford represented it would require.

38. Sanford also supplied initial scale-up orders in large quantities to further induce Polyworks to agree to invest in and build the production equipment and to hire additional personnel to staff its production lines.

39. Defendants further induced Polyworks to invest in and develop the proprietary, process and the custom building of the manufacturing equipment and to contract with Sanford by agreeing to provide Polyworks with the right of first refusal on any future pen production business employing the grip manufacturing process designed by Polyworks. Upon information and belief, Defendants' promise to Polyworks in this regard was illusory and not made in good faith.

40. In representing there would be a significant demand for the Plasma Pen, and that Defendant expected to sell 10,000,000 units in the first two years of production of the Plasma Pen, Defendants further induced Polyworks to agree to an exclusive relationship in the manufacture and sale of pens incorporating the grip technology designed for the Plasma Pen. Upon information and belief, Defendant's actions to reserve Polyworks' proprietary technology for itself were not made in good faith.

41. Sanford knew that, as a major international leader in the manufacture, marketing, distribution and sale of writing instruments, it was reasonable for Polyworks to rely upon Sanford's knowledge, expertise and representations regarding the market for the Plasma Pen, its target price, and the nature and size of the manufacturing equipment necessary to support Sanford's represented volume demand for this sole source contract.

42. Polyworks actually relied upon the representations made by Sanford in good faith and made business decisions in reliance upon those representations.

43. Polyworks has suffered, and continues to suffer, damages as a result of the misrepresentations made by Sanford.

**WHEREFORE**, the Plaintiff has suffered and continues to suffer substantial damages due to the Defendant's actions and requests monetary damages sufficient to compensate Polyworks for lost profits, loss of potential profits, expenses for the construction and maintenance of the proprietary equipment, lease and insurance costs and expenses, the cancellation fee, ownership of the proprietary process, punitive damages for bad faith dealing and such other relief as allowed by law and equity as well as attorneys fees, costs and interest on any monetary judgment awarded by this Honorable Court.

## COUNT FOUR
## (Negligent Misrepresentation)

44. The Plaintiff re-alleges all preceding paragraphs for this count as if fully set forth herein.

45. When Sanford made false and/or inaccurate representations to Polyworks, it knew, as an international leader in the manufacture, marketing, distribution and sale of writing instruments, that it was reasonable for Polyworks to rely upon Sanford's knowledge, expertise and reputation in the marketplace and its representations concerning the demand and volume for pens that Polyworks would be expected to manufacture and deliver.

46. Sanford either knew the representations it made to Polyworks were false, inaccurate or materially misleading when made, or knew so shortly thereafter, or under the circumstances and in the exercise of due diligence, Sanford should have known that the representations it made were false, inaccurate and/or materially misleading.

47. Sanford made these representations to Polyworks negligently, without regard for their truth or accuracy, and allowed, and continued to allow, Polyworks to rely upon these inaccurate and materially misleading representations to Polyworks' detriment.

48. Sanford knew, or reasonably should have known, that Polyworks was relying on these representations and that Polyworks had actually made business decisions in reliance on those representations.

49. Polyworks has suffered, and continues to suffer, damages as a result of the misrepresentations made by Sanford.

**WHEREFORE**, the Plaintiff has suffered and continues to suffer substantial damages due to the Defendants actions and requests monetary damages sufficient to compensate Polyworks for lost profits, loss of potential profits, expenses for the construction and maintenance of the proprietary process, the cancellation fee, ownership of the proprietary equipment, lease and insurance costs and expenses, punitive damages for bad faith dealing and such other relief as allowed by law and equity as well as attorneys fees, costs and interest on any monetary judgment awarded by this Honorable Court.

**COUNT FIVE**
**(Declaratory Judgment)**

50. Plaintiff realleges all preceding paragraphs of this count as if fully set forth herein.

51. The actions and conduct of Defendants have caused and continue to cause Polyworks irreparable harm and damages.

52. Polyworks, under the facts and circumstances as alleged, is entitled to declaratory relief pursuant to 28 U.S.C. §2201 et al.

**WHEREFORE**, Polyworks seeks a declaratory judgment against Defendants as follows:

a) That Defendants have, by their actions, cancelled the contract;

b) That Polyworks is entitled to the cancellation fee;

c) That any covenants of exclusivity are null and void;

d) That Polyworks is entitled to ownership of the manufacturing equipment.

e) In addition, Polyworks is entitled to any other relief and damages as allowed by law and equity as well as attorneys fees, costs and interest on any judgment awarded by this Honorable Court.

**Plaintiff hereby requests a Jury Trial**

RESPECTFULLY SUBMITTED BY

**PLAINTIFF POLYWORKS LLC**
By its Attorneys,

**PANNONE, LOPES & DEVEREAUX LLC**

William Devereaux, Esq. (#2241) (Primary Trial Counsel)
William O'Gara, Esq. (#4257)
1800 Financial Plaza
Providence, Rhode Island 02903
(401) 824-5100
(401) 824-5123 (fax)

Miriam A. Ross, Esq. (#3790)
41 Stadium Road
Providence, RI 02906
401-751-9954

#3555