UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| POLYWORKS, INC., | : | CIVIL ACTION NO. |
| Plaintiff, | : | 1:06-CV-00524-T-LDA |
| VS. | : | **JURY DEMANDED** |
| NEWELL RUBBERMAID INC., SANFORD NORTH AMERICA and SANFORD LP, | : | |
| Defendants. | : | FEBRUARY 2, 2007 |

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

Defendants Newell Rubbermaid Inc., Sanford North America ("Newell Rubbermaid") and Sanford LP ("Sanford") (collectively, Defendants"), hereby answer the Complaint of Polyworks, Inc. ( "Polyworks"). Except as expressly admitted, all of the allegations of the Complaint are denied.

1. The allegations of Paragraph 1 state legal conclusions to which no response is required. To the extent that it alleges any factual allegations, Defendants deny the allegations of Paragraph 1.

**PARTIES**

2. As to Paragraph 2, Defendants have insufficient knowledge or information upon which to form a belief and, therefore, leave Polyworks to its proof.

3. As to Paragraph 3, Newell Rubbermaid admits that it is a corporation organized under the laws of the State of Delaware with principal offices in Atlanta, Georgia, that it had an office at all times relevant hereto in Bellwood, Illinois, and that it is engaged in the business of manufacturing, marketing and selling writing instruments throughout the world. Newell Rubbermaid denies that "Sanford North America" is a division of its operations. Further answering, Newell Rubbermaid states that "Sanford North America" is not a legal entity or

division of its operations, but is merely a descriptive name that refers to Newell Rubbermaid's North American activities. All responses below by Newell Rubbermaid include "Sanford North America." The remaining allegations of Paragraph 3 are denied.

4. As to Paragraph 4, Defendants admit that Sanford is a limited partnership organized in the State of Illinois. The remaining allegations of Paragraph 4 are denied.

## JURISDICTION AND VENUE

5. The allegations of Paragraph 5 state a legal conclusion to which no response is required.

6. The allegations of Paragraph 6 state a legal conclusion to which no response is required.

## STATEMENT OF FACTS

7. Newell Rubbermaid denies that it is a party to a contract with Polyworks, and therefore denies all of the allegations of Paragraph 7. Sanford admits that in early 2004 it entered into a contract with the Polyworks concerning the manufacturing of component parts for a "Plasma Pen" product developed and designed by Sanford. Further answering, Sanford states that the terms of the contract are outlined in a March 2, 2004, letter from Roger J. LeFlamme and subsequent purchase orders, including a March 4, 2004, Sanford purchase order and that the contract documents speak for themselves. Sanford further admits that under the terms of this contract Polyworks agreed, among other things, to equip its production facilities with the capacity to produce 12,000 units per shift. Sanford further admits that under the terms of this contract, Polyworks agreed to supply Sanford with the Plasma Pen component parts at a "not to exceed" unit price. Sanford admits that it expected that demand for Plasma Pens could exceed 10,000,000 units. As to the remaining allegations of Paragraph 7, Sanford has insufficient

knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

8. Newell Rubbermaid denies all of the allegations of Paragraph 8. Sanford admits that the contract provides for a cancellation payment in the event that the Plasma Pen project is cancelled "due to reasons outside the Polyworks's influence" before the purchase of 10,000,000 units, and further that the contract provides that Sanford has no obligation to make the cancellation payment if Polyworks failed to meet agreed product specifications, project timing or supplier agreement. Sanford admits that it expected that demand for Plasma Pens could exceed 10,000,000 units. Sanford denies the remaining allegations of Paragraph 8.

9. Newell Rubbermaid denies all of the allegations of Paragraph 9. Sanford denies that Polyworks is the inventor or owner of any intellectual property associated with the Plasma Pen or its component parts. In further answering, Sanford states that the contract documents speak for themselves. As to the remaining allegations of Paragraph 9, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

10. Newell Rubbermaid denies all of the allegations of Paragraph 10. Sanford admits it has ordered approximately 1,000,000 component part units from Polyworks. Sanford denies the remaining allegations of Paragraph 10.

11. Newell Rubbermaid denies all of the allegations of Paragraph 11. Sanford admits that it placed its most recent order for the Plasma Pen component parts manufactured by Polyworks in December, 2005. Sanford denies the remaining allegations of Paragraph 11.

12. Newell Rubbermaid denies all of the allegations of Paragraph 12. Sanford admits that it has not cancelled the contract and that it has so informed Polyworks. Sanford denies the remaining allegations of Paragraph 12.

**COUNT ONE**
**(BREACH OF CONTRACT)**

13. Defendants incorporate their responses to Paragraphs 1 through 12 of the Complaint as their response to Paragraph 13 of Count One as if fully set forth herein.

14. Newell Rubbermaid denies all of the allegations of Paragraph 14. Sanford admits that it entered into a contract with the Polyworks concerning the manufacturing of component parts for a Plasma Pen product developed and designed by Sanford. In further answering, Sanford states that the contract documents speak for themselves. As to the remaining allegations of Paragraph 14, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

15. Newell Rubbermaid denies all of the allegations of Paragraph 15. Sanford admits that, under the terms of the contract, Polyworks may not employ the manufacturing process used for manufacturing the component parts of Sanford's Plasma Pen to manufacture products for any other entity. In further answering, Sanford states that the contract documents speak for themselves. As to the remaining allegations of Paragraph 15, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

16. Newell Rubbermaid denies all of the allegations of Paragraph 16. Sanford admits that the contract provides for a cancellation payment in the event that Sanford cancelled the contract "due to reasons outside the Polyworks influence" before the purchase of 10,000,000 units from the Polyworks, and further that the contract provides that Sanford has no obligation to

make the cancellation payment if Polyworks failed to meet agreed product specifications, project timing or supplier agreement. In further answering, Sanford states that the contract documents speak for themselves. Sanford denies the remaining allegations of Paragraph 16.

17. Newell Rubbermaid denies all of the allegations of Paragraph 17. Sanford admits that it placed an order under the contract with Polyworks on or about December 21, 2005, and further admits that, to date, Sanford has ordered approximately 1,029,074 component part units. Sanford denies the remaining allegations of Paragraph 17.

18. Newell Rubbermaid denies all of the allegations of Paragraph 18. Sanford admits that it has advised Polyworks that Sanford has not cancelled the contract and that it placed the most recent order under the contract on or about December 21, 2005. Sanford denies the remaining allegations of Paragraph 18.

19. Newell Rubbermaid denies all of the allegations of Paragraph 19. Sanford admits that Polyworks agreed not to use technology employed in the manufacturing of the Plasma Pen component parts to manufacture products for sale to entities other than Sanford. In further answering, Sanford states that the contract documents speak for themselves. As to the remaining allegations of Paragraph 19, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

## COUNT TWO
## (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

20. Defendants incorporate their responses to Paragraphs 1 through 19 of the Complaint as their response to Paragraph 20 of Count Two as if fully set forth herein.

21. Newell Rubbermaid denies all of the allegations of Paragraph 21. Sanford admits that it entered into a contract with the Polyworks concerning the manufacturing of component parts for a Plasma Pen product developed and designed by Sanford. In further answering,

Sanford states that the contract documents speak for themselves. As to the remaining allegations of Paragraph 21, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

22. Newell Rubbermaid denies all of the allegations of Paragraph 22. Sanford has insufficient knowledge or information upon which to form a belief as to the allegations of Paragraph 22 and, therefore, leaves Polyworks to its proof.

23. As to Paragraph 23, Defendants have insufficient knowledge or information upon which to form a belief and, therefore, leave Polyworks to its proof.

24. Newell Rubermaid denies all of the allegations of Paragraph 24. Sanford admits that it or its predecessors have been in the writing instrument production business since 1857 and that it is an international leader in this industry. Sanford denies the remaining allegations of Paragraph 24.

25. Newell Rubbermaid denies all of the allegations of Paragraph 25. In answering, Sanford states that the contract documents speak for themselves. Sanford denies the remaining allegations of Paragraph 25.

26. Newell Rubbermaid denies all of the allegations of Paragraph 26. Sanford admits that it expected to market Plasma Pens at the suggested retail price range of $4.00-$5.00 per pen. Sanford denies the remaining allegations of Paragraph 26.

27. Defendants deny all of the allegations of Paragraph 27.

28. Newell Rubbermaid denies all of the allegations of Paragraph 28. In answering, Sanford states that the allegations of Paragraph 28 state a legal conclusion to which no response is required. To the extent that Paragraph 28 asserts any factual allegations, Sanford has

insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

29. Defendants deny the allegations of Paragraph 29.

30. Defendants deny the allegations of Paragraph 30.

31. Newell Rubbermaid denies all of the allegation of Paragraph 31. Sanford admits that, to date, it has ordered approximately 1,029,074 component part units. Sanford denies that it has cancelled the contract. In further answering, Sanford states that the contract documents speak for themselves. Sanford denies the remaining allegations of Paragraph 31.

32. Defendants deny the allegations of Paragraph 32.

**COUNT THREE**
**(INTENTIONAL MISREPRESENTATION)**

33. Defendants incorporate their responses to Paragraphs 1 through 32 of the Complaint as their response to Paragraph 33 of Count Three as if fully set forth herein.

34. Newell Rubbermaid denies all of the allegations of Paragraph 34. Sanford admits that it anticipated a significant demand for Plasma Pens and so advised Polyworks. As to the remaining allegations of Paragraph 34, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

35. Newell Rubbermaid denies all of the allegations of Paragraph 35. Sanford admits that, at the time it entered into the contract with Polyworks, Sanford had substantial commercial buyers and retailers for its writing instrument products in the national marketplace, including Wal-Mart, which could result in sales of a large volume of Plasma Pens and that Sanford so informed Polyworks. As to the remaining allegations of Paragraph 35, Sanford has insufficient knowledge or information upon which to form a belief and, therefore, leaves Polyworks to its proof.

36. Defendants deny the allegations of Paragraph 36.

37. Defendants deny the allegations of Paragraph 37.

38. Defendants deny the allegations of Paragraph 38.

39. Defendants deny the allegations of Paragraph 39.

40. Defendants deny the allegations of Paragraph 40.

41. Defendants deny the allegations of Paragraph 41.

42. Newell Rubbermaid denies all of the allegations of Paragraph 42. Sanford has insufficient knowledge or information upon which to form a belief as to the allegations of Paragraph 42 and, therefore, leaves Polyworks to its proof.

43. Defendants deny the allegations of Paragraph 43.

**COUNT FOUR**
**(NEGLIGENT MISREPRESENTATION)**

44. Defendants incorporate their responses to Paragraphs 1 through 43 of the Complaint as their response to Paragraph 44 of Count Four as if fully set forth herein.

45. Defendants deny the allegations of Paragraph 45.

46. Defendants deny the allegations of Paragraph 46.

47. Defendants deny the allegations of Paragraph 47.

48. Defendants deny the allegations of Paragraph 48.

49. Defendants deny the allegations of Paragraph 49.

**COUNT FIVE**
**(DECLARATORY JUDGMENT)**

50. Defendants incorporate their responses to Paragraphs 1 through 49 of the Complaint as their response to Paragraph 50 of Count Five as if fully set forth herein.

51. Defendants deny the allegations of Paragraph 51.

52. Defendants deny the allegations of Paragraph 52.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Polyworks's Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Polyworks is barred from pursuing its claims under the doctrine of unclean hands.

### Third Affirmative Defense

Polyworks is barred from pursuing its claims under the doctrine of laches.

### Fourth Affirmative Defense

Polyworks is barred from pursuing their claims under the doctrine of waiver.

### Fifth Affirmative Defense

As to Count Four, Polyworks is barred, in whole or in part, from recovering damages because of its comparative negligence.

### Sixth Affirmative Defense

Polyworks cannot maintain a breach of contract claim because it is in breach of the parties' contract.

### Seventh Affirmative Defense

Polyworks cannot maintain a contract claim because of failure of consideration.

### Eighth Affirmative Defense

Polyworks is barred, in whole or in part, from recovering damages in this action because it failed to mitigate any such damages.

## COUNTERCLAIMS

1. Pursuant to Federal Rule of Civil Procedure 13, Defendant/Counterclaim-Plaintiff Sanford asserts these counterclaims against Plaintiff/Counterclaim-Defendant, Polyworks, Inc., and demands judgment against Polyworks thereon.

2. Polyworks and Sanford entered into a contract under which Polyworks agreed to manufacture, and Sanford agreed to purchase, component parts for a Plasma Pen product developed and designed by Sanford. The terms of the parties' contract are outlined in a March 2, 2004, letter from Roger J. LeFlamme and subsequent purchase orders, including a March 4, 2004, Sanford purchase order.

3. At or about the time that the parties entered into their contract, Sanford informed Polyworks that Sanford had one or more commercial buyers and retailers, including Wal-Mart, that had expressed an interest in purchasing the Plasma Pen for re-sale to the public and that Sanford had entered into sales contracts with one or more of these commercial buyers and retailers, including Wal-Mart, for the delivery of certain volumes of Plasma Pens at specified deadlines. At the time of contracting and thereafter, Sanford informed Polyworks that Sanford had to meet the delivery deadlines required by the commercial buyers and retailers, including Wal-Mart; otherwise Sanford risked losing these sales and the profits associated with these sales as well as contractual penalties, fees for delivering shipments late and potentially other consequences.

4. Under the parties' contract, Polyworks agreed to equip and maintain its production facilities with the capacity to produce 12,000 of the Plasma Pen component part units per shift or 120,000 component part units per week on a five day, two shift per week schedule.

Sanford provided significant funding towards the cost of the purchase and installation of the necessary manufacturing equipment and tooling.

5. Polyworks agreed to begin production of the component parts on July 12, 2004, and at an initial rate of 62,500 units per week.

6. At and about the time of contracting, Polyworks represented that it was capable of meeting such production requirements and production start date.

7. Subsequent to the time of contracting, Polyworks continued to give Sanford repeated assurances that Polyworks could meet both the production start date as well as the production output requirements of the parties' contract.

8. At the time of contracting and thereafter, Polyworks was aware that it was imperative that Sanford meet its delivery deadlines with the various retailers, but most especially Wal-Mart.

9. Relying on Polyworks's representations and contractual agreement to produce the component parts in a timely manner, Sanford expended substantial time and money in the promotion and implementation of the Plasma Pen project, including, but not limited to, negotiating purchase contracts with retailers, preparing retail promotional displays for in-store placement, marketing and advertising the Plasma Pen, producing or purchasing the other component parts of the Plasma Pen and investing significant capital in equipment and tooling for the Plasma Pen project.

10. Despite its assurances and contractual obligations, Polyworks missed the July 12, 2004, production start date.

11. Thereafter, Polyworks repeatedly had to push back the production start date despite making assurances it could meet each of Polyworks' new production start dates. At first,

Polyworks pushed off the production start date to August 16, 2004, but Polyworks failed to begin production at that time and Polyworks pushed off the production start date again to September 27, 2004, but again failed to meet its revised production start date.

12. Moreover, even after Polyworks began production of the component parts, it failed to meet the production output requirements of the parties' contract and produced significantly fewer component parts than Polyworks had represented to Sanford it would be capable of producing and to which Polyworks had committed to meet.

13. As a result of Polyworks's failure to comply with its contractual obligations concerning the production start date and the production output requirements, Polyworks failed to produce the component parts necessary to enable Sanford to meet its contractual delivery deadlines to one or more retailer customers, including Wal-Mart.

14. As a result of Polyworks's failure to comply with its contractual obligations concerning the production start date and the production output requirements, Sanford was unable, through no fault of its own, to deliver the Plasma Pens ordered by one or more retailers, including Wal-Mart, as required to fulfill purchase orders with these retailers. As a result, Sanford incurred direct and indirect costs, including fines, penalties and/or other fees and damage to its relationship with such retailer customers.

15. As a result of Polyworks's failure to comply with its contractual obligations concerning the production start date and the production output requirements, one or more retailers, including Wal-Mart, cancelled their purchase orders with Sanford for Plasma Pens and, as a result, Sanford suffered damages, including, without limitation, lost profits and advertising and other expenses.

16. As a result of Wal-Mart's cancellation of its purchase of Plasma Pens, retailers that would otherwise have placed orders for the Plasma Pen did not do so and Sanford lost the profits associated with these other orders.

**FIRST COUNTERCLAIM**
**(BREACH OF CONTRACT)**

17. Sanford incorporates and realleges each of the allegations of preceding Paragraphs 1 through 16 as Paragraph 17 of its First Counterclaim as if set forth fully herein.

18. The parties entered into a contract whereby Polyworks agreed, among other things, to manufacture and supply component parts necessary for the production of Sanford's Plasma Pen product at a certain minimum volume and to begin production on one or more dates certain.

19. Polyworks breached the parties contract by, among other things, failing to meet the contract's production requirements and deadlines.

20. As a result of Polyworks's breach of contract, Sanford suffered damages in an amount in excess of one million dollars, but to be more precisely determined by the trier of fact.

**SECOND COUNTERCLAIM**
**(NEGLIGENT MISREPRESENTATION)**

21. Sanford incorporates and realleges each of the allegations of preceding Paragraphs 1 through 20 as Paragraph 21 of its Second Counterclaim as if set forth fully herein.

22. Polyworks misrepresented its capacity and ability to manufacture the component parts in the quantities and within timeframe requested and required by Sanford.

23. Polyworks's representations concerning its capacity and ability to manufacture the component parts were false at the times they were made.

24. Polyworks knew, or should have known, that that these representations were false and that Sanford would rely upon these misrepresentations in agreeing to enter into the business relationship with Polyworks and in Sanford's dealings with its customers.

25. Polyworks failed to exercise reasonable care in making the aforesaid misrepresentations.

26. Sanford's reliance on these misrepresentations was reasonable under the circumstances.

27. As a proximate result of the aforementioned misrepresentations by Polyworks, Sanford suffered damages in an amount in excess of one million dollars, but to be more precisely determined by the trier of fact.

**PRAYER FOR RELIEF**

WHEREFORE, Sanford respectfully prays for judgment in its favor on its counterclaims against Polyworks as follows:

i) Damages in the amount to be determined by the trier of fact;

ii) Prejudgment interest;

iii) Costs of suit;

iv) Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Defendants demand a trial by jury on each claim and counterclaim so triable, including Defendant/Counterclaim-Plaintiff Sanford's counterclaims.

DEFENDANTS, NEWELL RUBBERMAID INC., SANFORD NORTH AMERICA and SANFORD LP

/s/ Joseph K. Scully
Joseph K. Scully (#6217)
*jkscully@daypitney.com*
Day Pitney LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)

Its Attorneys

**CERTIFICATION OF SERVICE**

I hereby certify that on February 2, 2007, a copy of foregoing **Answer to Complaint and Counterclaims** was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing]. Parties may access this filing through the Court's system.

/s/ Joseph K. Scully
Joseph K. Scully (#6217)