UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| POLYWORKS, INC. | : | |
| | : | |
| v. | : | C.A. No. 06-524T |
| | : | |
| NEWELL RUBBERMAID INC. | : | |
| SANFORD NORTH AMERICA | : | |
| SANFORD LP | : | |

**ANSWER TO COUNTERCLAIM**

1. Paragraph 1 recites a legal basis for a counterclaim and therefore no response is required. To the extent a response is required, Defendant in Counterclaim (hereafter "Polyworks") leaves Plaintiff in Counterclaim (hereafter "Sanford") to its proof thereon.

2. Polyworks admits that it entered into a contract with Sanford pursuant to which Polyworks agreed to manufacture, and Sanford agreed to purchase a urethane pen to be sold under the Papermate brand name "Plasma." Polyworks denies that the Plasma Pen was solely developed and designed by Sanford. Polyworks admits that there was a letter dated March 2, 2004, prepared by Sanford and at Sanford's request placed on Polyworks' letterhead, signed by Roger Laflamme and that a certain purchase order from Sanford dated March 4, 2004 outlined the initial terms of the contract between the parties, but such letter and purchase order were modified and amended by mutual agreement of the parties through various emails, meetings and other correspondence, collectively and solely for purposes of this Answer to Counterclaim, "the contract."

3. Polyworks admits that at or about the time the parties entered into the contract, Sanford informed Polyworks that Sanford had one or more commercial buyers and retailers that had expressed an interest in purchasing the Plasma Pen for resale to the public and that Sanford would require certain volumes of the Plasma Pens but denies Sanford disclosed the names of the specific buyer and/or retailers at such time. Polyworks admits there were discussions with representatives of Sanford concerning the development and manufacture of the Plasma Pen and that Sanford required certain volumes of the pen for its various customers. Polyworks has insufficient information regarding any sales contracts Sanford asserts it entered into with commercial buyers, including Wal-Mart. Polyworks denies that at or about the time the parties entered into the contract that Sanford informed Polyworks of any specified deadlines and leaves Sanford to its proof on that averment. After a number of re-negotiated deadlines mutually agreed to by the parties, Polyworks admits that Sanford expressed concerns about previously undisclosed deadlines and requirements and that Sanford asserted that there may be contractual penalties and late delivery fees associated with various Sanford and/or Papermate brand products, including the Plasma Pen, being supplied to retailers, including Wal-Mart; however, Polyworks denies that at the time the parties entered into the contract that Sanford informed Polyworks that if delivery deadlines were not met Sanford would risk losing sales and profits associated with such sales as well as contractual penalties, fees for delivery of late

shipments and potentially other consequences and leaves Sanford to its proof on that averment.

4. Polyworks admits it agreed to use its proprietary molding technology to custom design and construct equipment and tooling with the capacity to produce 12,000 units per shift and to employ two shifts a day to produce 120,000 units per week, of the Plasma Pen, and that Sanford contributed a total of $750,000 towards the cost of such equipment and tooling. Polyworks denies that such sum represents the entire investment necessary for the custom design and implementation of the tooling, construction and installation of the machine using Polyworks' proprietary technology for the manufacture of the Plasma Pen custom manufacturing line.

5. Polyworks admits the initial rate of production was 62,500 units of the Plasma Pen per week and that the date July 12, 2004 appears on the purchase order dated March 4, 2004 but Polyworks denies that such date was the agreed upon delivery date.

6. Polyworks admits, at or about the time of contracting, that it agreed to invest its own resources to produce 12,000 units of the Plasma Pen per shift or 120,000 component part units per week on a five day, two shift per week schedule and that Polyworks would hire the extra personnel to staff those shifts. Polyworks admits it had the capability to meet the production requirements of the contract but denies it made any representation or guarantee of meeting a specific production or start date.

7. Denied.

8. Denied.

9. Polyworks admits that Sanford expended funds to purchase and supply one of the components of the Plasma Pen and that Sanford contributed a total of $750,000 towards the cost of equipment and tooling for the Plasma Pen. Polyworks denies it made any representations to Sanford on the status of the project in that Sanford had its own personnel monitoring the project at Polyworks' facility which personnel made its own reports and representations to Sanford as to the progress and status of the project. Polyworks has insufficient information regarding any time or money Sanford asserts it expended in the promotion and implementation of the Plasma Pen, and Polyworks denies the remaining averments in Paragraph 9 leaving Sanford to its proof.

10. Polyworks admits that the target start date for commercial production of the Plasma Pen was July 12, 2004 and that production on such date was based on Sanford being able to supply materials and component parts to Polyworks by such date, but denies there was a contractual obligation for that date or that Polyworks made assurances that production would start on such date.

11. Polyworks denies that it unilaterally "pushed back" any production start dates and that Sanford and Polyworks mutually agreed to each and every postponement. Polyworks denies the remaining averments in Paragraph 11 and leaves Sanford to its proof.

12. Polyworks' admits that its equipment and technology could and can produce more parts than Sanford required and/or ordered after scale-up of the

equipment and Polyworks denies the remaining averments in Paragraph 12 and leaves Sanford to its proof.

13. Denied.

14. Denied.

15. Denied.

16. Polyworks has insufficient information regarding any sales contracts Sanford claims it entered into with retailers, including Wal-Mart, and leaves Sanford to its proof on the averments in Paragraph 16.

**FIRST COUNTERCLAIM**
**(BREACH OF CONTRACT)**

17. Polyworks incorporates its responses to Paragraphs 1-16 in this Paragraph 17 as if fully set forth in the same length and detail.

18. Polyworks admits that the parties entered into the contract whereby Polyworks agreed, among other things, to manufacture and supply a component part for the Plasma Pen product at a certain minimum volume. Polyworks denies that production was set for one or more dates certain.

19. Denied.

20. Polyworks denies it breached the contract. Polyworks has insufficient information regarding the remaining allegations in Paragraph 20, and leaves Sanford to its proof thereon.

## SECOND COUNTERCLAIM
## (NEGLIGENT MISREPRESENTATION)

21. Polyworks incorporates its responses in Paragraphs 1-20 in this Paragraph 21 as if fully set forth in the same length and detail.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Polyworks denies it made any misrepresentations. Polyworks has insufficient information regarding the remaining allegations in Paragraph 27, and leaves Sanford to its proof thereon.

WHEREFORE, Polyworks requests the Court enter judgment in its favor and against Sanford and to award it its attorneys' fees and costs of suit and such other relief as the Court deems just and proper under law and equity.

## AFFIRMATIVE DEFENSES

Polyworks, in response to Sanford's counterclaim, pleads the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE

Accord and satisfaction.

## SECOND AFFIRMATIVE DEFENSE

Assumption of risk.

## THIRD AFFIRMATIVE DEFENSE

Contributory negligence.

## FOURTH AFFIRMATIVE DEFENSE

Fraud.

## FIFTH AFFIRMATIVE DEFENSE

Statute of frauds.

## SIXTH AFFIRMATIVE DEFENSE

Waiver.

## SEVENTH AFFIRMATIVE DEFENSE

Latches

## JURY DEMAND

Polyworks demands that a trial by jury on each counterclaim so triable.

RESPECTFULLY SUBMITTED BY

PLAINTIFF POLYWORKS LLC
By its Attorneys,

**PANNONE, LOPES & DEVEREAUX LLC**

/s/William P. Devereaux
William P. Devereaux (#2241)
(Primary Trial Counsel)
William E. O'Gara (#4257)
1800 Financial Plaza
Providence, Rhode Island 02903
(401) 824-5100
(401) 824-5123 (fax)
wdevereaux@pld-law.com
wogara@pld-law.com

Miriam A. Ross, Esq. (#3790)
10 Elmgrove Avenue
Providence, RI 02906
401-270-9449
maross@mrosslegal.com

**CERTIFICATION**

I hereby certify on this 15th day of March, 2007 this document was filed electronically and is available for reviewing and downloading to the ECF registered counsel of record.

Joseph K. Scully, Esq.
Day Pitney LLP
CityPlace I
Hartford, CT 06103-3499

/s/ William P. Devereaux

#4541